CHARLES SCANLON and others, Appellants, v. GEORGE
SCANLON and others, Appellees.

**Wills:** GOOD FAITH OF EXECUTORS: PRESUMPTION. The contention that an executor in the execution of his trust committed gross fraud upon the beneficiaries and the court must be established by a clear and satisfactory showing, sufficient to exclude the presumption of good faith attaching to ordinary business transactions.

**Same:** ELECTION BY WIDOW: SERVICE OF NOTICE. The notice to be served upon a widow requiring her to elect whether she will accept the provisions of the will should be a written notice, but the service need not be with all the formalities required for the service of an original notice of the commencement of an action.

**Same:** RETURN OF SERVICE. Unless otherwise provided a statute requiring service of notice contemplates personal service by delivery of a written notice in some manner to the person to whom it is directed; but it is not essential that the service be made by an officer, nor is it ordinarily provable by a return endorsed thereon, but the fact of service may be proven by any competent evidence.

**Same:** SERVICE OF NOTICE: RECORD OF SAME. It is not necessary that notice to the widow to make her election and proof of service be entered upon the probate record to give it effect; nor is it necessary that it be served upon legatees.

**Same:** NOTICE OF ELECTION: BY WHOM GIVEN. The statute does not provide that the notice requiring the widow to elect shall be given by all the parties interested in the estate, but it is sufficient if given by such as may be interested in requiring the election.

**Same:** NOTICE OF ELECTION: ACCEPTANCE OF WILL: RECORD OF SAME. The statute requires that a widow desiring to accept the benefits of a will shall upon notice indicate her acceptance in open court or by a writing filed therein, but it does not require a full record of the notice of election or of its manner of service, nor does it provide the manner in which the conclusive presumption of an acceptance of the will by failure to express an election shall be shown of record; so that both of these matters may be established by any competent proof.

*Appeal from Johnson District Court.*—HON R. P. HOWELL, Judge.

SATURDAY, APRIL 6, 1912.

ACTION in equity for partition of real estate. There was a decree for the defendant, and plaintiffs appeal. The material facts are stated in the opinion.—*Affirmed.*

*Remley & Calkins* and *W. J. Clair,* for appellants.

*Ball & Ball* and *Wade, Dutcher & Davis* for appellees.

WEAVER, J.—In the year 1901 John Scanlon died testate, seised of the real estate now in controversy. By the terms of his will he gave to his wife, Mary, a life use of their dwelling house and a life annuity of $200, which was made a charge or lien upon the real estate. This provision for the wife was expressly declared to be in lieu of dower in the estate of the testator. To his children, Charles, Edward, and Ellen, he gave legacies of $100 each, to his son Frank and daughter Christine $50 each, and to two adopted children $300 each. Subject to the gifts above enumerated all the residue and remainder of the testator's estate was given to his son, George Scanlon, who is the principal defendant in this proceeding. On December 6, 1901, the will was duly admitted to probate, and Edward Scanlon was appointed and qualified as executor. On December 30, 1905, the executor filed a report showing an account of his doings in the matter of said estate, and making application for authority to sell one tract of the land. One paragraph of said report is in the following words: "Said executor further states that on the 28th day of September, 1904, the said executor served on Mary J. Scanlon, the widow of said John Scanlon, deceased, at her residence on said premises in Johnson county, Iowa, a notice, of which

the following is a copy: 'To Mary J. Scanlon, Widow of John Scanlon, Deceased: You are hereby notified that the will of John Scanlon, deceased, has been filed and admitted to probate in the district court of Johnson county, Iowa, a copy of said will is annexed to this notice and served on you herewith, and you are required to elect within six months from the time of the serving of this notice upon you whether you will consent to the provisions of said will or not, and such consent, if given, shall be in open court or by writing filed therein. Geo. M. Scanlon, Devisee.' And at the same time and place he delivered personally to said Mary Scanlon a copy of the will of the said John Scanlon, deceased, and at the same time and place delivered her the original notice of which the above is a copy. That fifteen months have expired since the service of said notice on said Mary J. Scanlon, and she has made no election to accept or refuse to accept the provisions of the will, and has filed no consent or refusal to consent to the provisions of the will, and had no such consent or refusal to consent entered of record as provided by law, and by reason thereof she has consented to the provisions of the will and elected to take thereunder." The executor's accounting seems to have been approved, and the application for the sale of the designated tract of land granted. The conveyance thus authorized was afterward executed and duly reported to the court.

In May, 1909, Mary Scanlon, the widow of the testator, died intestate. The plaintiffs herein are heirs of Mary Scanlon, and as such lay claim to an undivided interest in the land of which her husband died seised. This claim is asserted upon the theory that said Mary Scanlon was never served with notice as provided by law requiring her to elect between the provision made for her benefit in the will of her deceased husband, and the distributive share in his estate to which she was entitled by statute. It is also alleged by them that said widow never did in fact elect to take under said will, and therefore she became fully

vested with a one-third interest in all the lands of which John Scanlon died seised or possessed, and this share, upon her death, passed to her children, who now hold the same as tenants in common. This claim is contested by George Scanlon, who avers that, after the death of John Scanlon and the probate of the will, he caused notice to be served on his said mother as provided by law, requesting her to elect whether to take under the will or to demand and receive her statutory share in said estate, and, having failed for more than six months to signify her purpose to claim her statutory share, she is conclusively presumed to have consented to the provisions of the will. The plaintiffs deny the giving of such notice, and aver that Mary Scanlon was at the time in question old, feeble, ignorant, and inexperienced, and, if any such notice was served or attempted to be served she was misled and imposed upon by the defendant George, and did not understand the nature and effect of the notice, and was not bound thereby. Upon hearing the evidence offered, the trial court found that the allegations of the petition had not been sustained, that George Scanlon was the sole owner of the land, and that plaintiff's prayer for relief should be denied.

The brief and argument on part of appellants are directed to two propositions: First, the evidence fails to show that the alleged notice was ever served upon Mary Scanlon; and, second, that no sufficient record proof of such service is shown. The first of these objections, if we understand counsel, is, in effect, a denial of the credibility of the witnesses who testify to such service, while the other is grounded upon the thought that, even if the witnesses testifying to the fact are found to be credible, yet the notice so shown is insufficient in form and substance, and the same has never been made of record as required by the statute, and is therefore ineffective to put the widow to an election between the benefits of the will and her statutory share. Upon the question whether the notice offered in evidence

was in fact served upon Mary Scanlon in the manner claimed by the defendants and indicated by the probate records, we have examined the testimony with care, and reach a conclusion in accordance with the finding of the trial court. It is to be admitted that the effect of this evidence upon both sides is more or less confused and weakened by the apparent interest and partisanship of the witnesses, and some of it must be excluded from consideration under Code, section 4604. These are the usual concomitants of lawsuits between members of the same family, and it is not always nor ordinarily an easy task for a court to determine the truth with any great degree of certainty.

In the case before us, however, after making what we deem due allowance for all circumstances affecting the credibility and weight of the competent testimony, we think

1. Wills: good faith of executors: presumption.

there is little, if any, doubt that the notice found in the probate record was in fact served as therein indicated. To hold otherwise requires us to find that Edward Scanlon as executor of his father's will committed a gross fraud upon his aged mother and upon the court to which he was answerable for the due execution of his trust, and that both he and the defendant, George Scanlon, are now engaged in bolstering up that fraud by deliberate perjury. Such imputation should not have the sanction of the court except upon clear and satisfactory showing of facts, which excludes the presumption of good faith attaching to ordinary business transactions. So far as appears from the record, the executor, Edward Scanlon, had no interest in depriving his mother of her distributive share in her husband's estate. On the contrary, it was to his apparent interest that she should refuse her consent to the will, for in that instrument his father had remembered him only to the extent of a nominal legacy while giving to George all his real estate to the extent of about four hundred acres of farm land. Men do not ordinarily enter upon an elaborate scheme of fraud without the

inducement of profit or gain of some kind, nothing of which is here disclosed so far as Edward is concerned. Nothing is to be gained by prolonging this opinion for a recitation of the testimony. It is enough to repeat that we think the alleged service of notice has been fairly established.

The more serious contention, and the one to which counsel's argument is chiefly directed, is that conceding the service of notice to have been made as claimed by the defendant it was still insufficient under the statute.

Bearing upon this phase of the case, the objection is raised that service of such notice must be made in the manner prescribed by law for service of original notices. That is, the person serving the same must read it to the person to whom it is directed, and leave with him or her a copy thereof, and return of such service must be indorsed on the notice stating the form and manner in which it was made. The point thus made can not be sustained. The statute (Code, section 3376) provides that the widow's share in her husband's estate can not be affected by her husband's will unless consent thereto is given within six months after a copy thereof has been served upon her by the other parties interested in the estate, and stating that she is required to make her election. Such election is to be made in open court or by writing filed therein which shall be entered on the proper records thereof; and, if at the expiration of six months no such election is made it is to be conclusively presumed that the widow chooses to take under the will. As this statute provides that the notice must be "served," we think it should be held that a written notice is intended, but there is no direction that it shall be served after the manner required by law for the service of original notice of the commencement of an action or proceeding in court, nor is there any general statute to that effect.

2. SAME: election by widow: service of notice.

It may also be admitted for the purposes of this case that, unless otherwise specified, a statute providing for the

service of notice contemplates personal service, and not one which is merely constructive or substituted. But what is "personal service"? As already suggested, we have no statutory definition of the phrase. It has been defined by the courts as meaning "actual service by delivering to the person, and not to a proxy." See *Hobby v. Bunich*, 83 Ga. 1 (10 S. E. 113, 20 Am. St. Rep. 301); *Bank v. Holmes*, 12 N. D. 38 (94 N. W. 764). This court has defined it as "the actual delivery in some way of the notice" to the person to whom it is directed (*McKenna v. Ins. Co.*, 73 Iowa, 455), and this we think is the substantial effect of all the authorities. It is not essential to such service that it be made by an officer, nor is it ordinarily provable by a return indorsed thereon. *Ball v. Peck*, 43 Ill. 482; *Vennum v. Vennum*, 56 Ill. 430, *Hollingsworth v. Sndyer*, 2 Iowa, 435. In the last cited case it is said concerning the service of notice to quit, which must be given before an action of forcible entry and detainer can be maintained, that the statute prescribing the method of service of original notices has no application "to private papers and notices between parties in their ordinary business transactions and which may relate to or form the foundation of a right." And this we think is a rule of quite general application.

3. SAME: return of service.

If a return of service had been required in the present case, the demand would be sufficiently answered in the return made by the executor and entered upon the record. The return is irregular in form, but we think it not necessarily void. If such return was not required, and we think it was not, the fact of service is shown by several different witnesses who were present at the time and swear that the writing was not only delivered to the widow, but was then and there read to her. The essential thing, as we have seen, was that the written notice should in some way be delivered to Mrs. Scanlon, and of this there can be little doubt.

It is further contended that the widow is not put to her election until notice has been served upon her and entered upon the probate record. To sustain this view would be to amend the statute which speaks only of the service. Of course, when the person or persons giving the notice seek to take advantage of the widow's failure to elect within the time allowed after such service, the court would require them to produce proof thereof before giving effect to the statutory presumption of her consent to take under the will. But we find no requirement that the notice and proof of service shall be entered upon the record before the six months period begins to run. There is no occasion for such immediate record. The only persons in this case having any direct interest in the matter at the time of serving the notice were Mary Scanlon and her son George.

4. SAME: service of notice: record of same.

Notice to her other children and prospective heirs is not contemplated by statute.

A further point is made that as the statute puts the widow to her election only after notice has been served upon her " by the other parties interested in the estate," and as the notice relied upon by the defendants was given by George Scanlon alone, and not by all the heirs, it must therefore be held insufficient. The objection is so obviously unsound that counsel can not be supposed to place serious reliance upon it. It could rarely happen that all the heirs and parties interested in an estate would be inclined or have any reason to insist upon an election by the surviving wife. It is more often the case that some of them will be directly or indirectly benefited by her failure to elect. Such is the case here. The defendant George Scanlon had been devised all the landed estate left by his father. If the mother refused to elect between her statutory rights in this property and the benefits of the will and no notice to elect was served upon her, George would lose the one-third of the property, and his

5. SAME: notice of election: by whom given.

brothers and sisters would become prospective heirs thereof through their mother. Under such conditions, it would be a manifest absurdity to require George to obtain the co-operation of all parties interested in the estate before he could protect the devise in his favor by service of notice upon the widow. Of course, this suggestion would be insufficient if the statute clearly imposed such requirement upon the devisee, but we think it very certain that such construction is unnecessary. The statute does not say that all parties interested in the estate must join in such notice. It means no more than it says that other parties interested in the estate may serve a notice which shall require an election to be made. It is a right which is created for the benefit of all who may be interested in compelling an election, but it is nevertheless a right which can be exercised by any one or more of them. If the statute should provide that parties interested in an estate may within a given time after the death of deceased contest the validity of his will, no one would seriously contend that all who are so interested must join in the contest to give it any standing in court. Such provisions do no more than designate the class of persons to whom the right is given and any member of that class may avail himself of its benefits.

Finally, it is urged with much insistence that the statute requires that the notice and proof of its service and the widow's election if any should not only be filed in the 6. SAME: notice of election: acceptance of will: record of same. probate proceedings, but should be entered upon the record before any election by the widow can be established or presumed. We have already given some attention to this aspect of the case, but will repeat that the statute nowhere requires that the notice and proof of its service shall be spread upon the record. It does require that when the widow desires to indicate an express acceptance of the benefits of the will she shall do it in open court, or by writing filed therein

which shall be entered on the proper records, but it makes no such provision for the full record of the notice or of its manner of service.

Again, while providing that failure to elect within six months after service of notice shall give rise to a conclusive presumption of her acceptance of the will, it does not prescribe in terms or by necessary implication the manner in which these facts shall be shown of record, and the court can not properly extend the statute beyond the requirements therein expressed. That the fact of notice and its service should appear in or upon the probate records before the matter of the widow's election or waiver thereof can be conclusively presumed may be admitted, but the manner in which it shall be so made to appear is not necessarily of vital importance. In the case before us the fact of the service and the notice itself is embodied in a report of the executor which is spread upon the record. It was so recorded in the lifetime of Mary Scanlon, and, although she lived several years thereafter, she failed to indicate an election save by her silence. Whether the so-called return of service which accompanies such notice is sufficient of itself is not a material consideration. For reasons already stated, it is probable that service can not be proved in that manner. If proof was required, we may presume that the court before approving the report of the executor exacted sufficient proof to satisfy itself of the truth of the matters therein stated, including the allegation of service. But, in any event, even if this theory be doubted, we are disposed to hold that, when such service was attacked in this action, it was entirely competent for the defendant to make proof thereof precisely as he might prove any other material fact in issue. The service was so proved and the admitted failure or refusal of the widow to make an election as provided by law must of necessity be treated as an acceptance of the will.

This acceptance left the real estate to pass under the

devise to George Scanlon wholly divested of the widow's right and claim of dower or distributive share, and at her death she was seised of no right or interest therein which could pass or descend to the plaintiff.

The decree below was right, and it is *affirmed.*